Filed 7/21/14  P. v. Gronvold CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B247235 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA048581) |
| v. | |
| DANIEL MARTIN GRONVOLD, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lisa M. Chung, Judge.  Affirmed.

Thomas K. Macomber and Renée Paradis, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell and Stephanie C. Santoro, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Penal Code section 2933.1, subdivisions (a) and (c),[1] limit a defendant's worktime credits under section 2933 and presentence conduct credits under section 4019 to no more than 15 percent of the actual period of confinement for any person convicted of a felony offense listed in section 667.5, subdivision (c), as a "violent felony." One such violent felony is first degree (residential) burglary "wherein it is charged and proved that another person, other than an accomplice, was present in the residence during the commission of the burglary." (§ 667.5, subd. (c)(21).)

Ten years ago in *People v. Garcia* (2004) 121 Cal.App.4th 271 (*Garcia*) this court held there was neither a statutory nor a federal constitutional right to a jury determination whether the defendant's first degree burglary qualified as a violent felony for purposes of the presentence conduct limitation prescribed by section 2933.1, subdivision (c). Our federal constitutional analysis focused primarily on the scope of *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 [120 S.Ct. 2348, 147 L.Ed.2d 435] (*Apprendi*), which held any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than a prior conviction, must be submitted to the jury and proved beyond a reasonable doubt. However, our discussion of that issue also cited *Harris v. United States* (2002) 536 U.S. 545, 565 [122 S.Ct. 2406, 153 L.Ed.2d 524], which had concluded factors determining an increased minimum penalty for an offense, if there was no increase beyond the statutory maximum penalty, could be decided by the trial judge rather than the jury. *Harris* was overruled last year by *Alleyne v. United States* (2013) 570 U.S. ___ [133 S.Ct. 2151, 186 L.Ed.2d. 314] (*Alleyne*), which held *Apprendi* applies with equal force to facts increasing the mandatory minimum penalty for an offense.

Daniel M. Gronvold was convicted after a jury trial of first degree burglary. At sentencing the court found true the charge in the information that another person, other than an accomplice, was present in the residence during the commission of the burglary and calculated Gronvold's presentence custody credit pursuant to the conduct limitation

---

[1] Statutory references are to the Penal Code.

2

prescribed by section 2933.1, subdivision (c), for a violent felony. On appeal Gronvold contends his Sixth and Fourteenth Amendment right to a jury trial was violated by the trial court's finding that someone was present in the residence at the time of the burglary, arguing our decision in *Garcia* is no longer good law in light of the Supreme Court's decision in *Alleyne* overruling *Harris v. United States*. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *The Information*

Gronvold was charged in an information filed July 13, 2012 with one count of first degree burglary (§ 459) and one count of grand theft (§ 487, subd. (a)). As to the burglary it was specially alleged, "the above offense is a violent felony within the meaning of Penal Code 667.5(c) in that another person, other than an accomplice, was present in the residence during the commission of the above offense." The information further alleged Gronvold had suffered one prior serious felony (making a criminal threat) within the meaning of both section 667, subdivision (a), and the three strikes law (§§ 667, subds. (b)-(i); 1170.12, subds. (a)-(d)) and had served several separate prison terms for prior felony convictions (§ 667.5, subd. (b)).

Gronvold pleaded not guilty and denied the special allegations. Prior to the start of trial, the grand theft charge was dismissed in furtherance of justice (§ 1385).

2. *The Evidence at Trial*

Peter Bringas co-owned a two-story, partially furnished home in Lancaster that was in pre-foreclosure. He stayed in the home at least once each week on weekends. Bringas retained Stan Gates, a realtor, to help him sell the house.

At approximately 11 a.m. on March 14, 2010 Gates installed a lockbox on the door for potential buyers and their agents and did a walk-through inspection of the property. Gates noticed things were in disarray: Cabinets were open; it appeared that someone had rummaged through the closets; and kitchen items were on counters where they did not belong. A computer printer, which normally was on the desk in the upstairs

3

office, had been placed on the second floor stair landing. Gates telephoned Bringas and reported what he had seen inside the house.

Richard Genari, the real estate agent for potential buyers Scott and Lisa Van Weelden, arrived at the house on March 14, 2010 between noon and 2:00 p.m. Genari noticed a black pickup truck in the driveway, backed up to the garage of the house, and recognized the young woman standing on the passenger side of the vehicle as the daughter of a real estate agent who worked with Genari. The woman, Janene Lavelle, told Genari she was meeting a friend but might have come to the wrong house and then drove off in the truck. (Lavelle repeated this explanation for her presence at Bringas's home to law enforcement officers when they initially contacted her after the burglary was reported.) Apparently neither Genari nor the Van Weeldens saw any household goods or electronics in the truck when Lavelle left.

Genari and the Van Weeldens entered the house using the key Gates had left in the lockbox. They encountered Gronvold as he was coming down the stairs, smoking a cigarette. Gronvold said he was there to clean up the house (that is, to empty it of any trash). Gronvold asked if Lavelle was still outside and became angry when told she was not. Gronvold then left the house. Genari called Gates, told him what had happened and gave him the license plate number of the truck, which Lisa Van Weelden had written down. The description of the truck and the license number matched Lavelle's 2007 black Toyota Tundra.

Gates returned to the house. He noticed the printer that had been at the top of the stairs on his earlier visit was no longer there. Bringas went to the house around 4:00 p.m. that day. He testified the house appeared to have been ransacked. Some goods had been thrown around the floor. Several pillow cases were filled with kitchen items (pots, pans and glasses) and stacked by the front door, together with the computer printer. Bringas ultimately determined a computer, lawn mower, cordless drill, DVD player, three mink coats, other items of clothing and several major appliances were missing.

4

Lavelle, who had been convicted at an earlier trial of first degree burglary for her role in the March 14, 2010 incident, testified she and her husband had been considering purchasing a home. When she saw the for-sale sign in the yard of Bringas's home, she and her friend Gronvold stopped to look at the house. She did not intend to enter the residence and did not do so. She did not know whether Gronvold had entered the home.

Gronvold testified in his own defense. He explained he had accepted Lavelle's last-minute invitation to help her clean out a home in foreclosure, something the two of them had previously done. Lavelle entered the home first through the front door; he was not sure how she had gained entry. Gronvold followed her in and saw a lot of boxes stacked throughout the house. He walked upstairs to look around and evaluate the job. He was in the house for about 10 minutes. When he came downstairs, he encountered Genari, who told him Lavelle had left. He was unhappy about that because it was unusual for her to leave him, especially in an unfamiliar part of town. After confirming that Lavelle had driven away in the truck, Gronvold left the neighborhood.

In closing argument the prosecutor emphasized to prove burglary the People did not have to establish Gronvold actually stole anything from Bringas's house, only that he had entered the home with the intent to commit a theft. He cited as evidence of that intent the movement of the computer printer from the upstairs office to the top of the stairs to the front door. He posited that Lavelle's truck had been backed up to the garage, rather than parked on the street or facing forward, to permit easy loading of stolen goods and that Lavelle was standing outside acting as a lookout. The prosecutor emphasized Lavelle's false story about attempting to visit a friend when initially confronted by Genari, as well as the fact that Lavelle's testimony was that she had stopped at the home to see if she wanted to purchase it, not, as Gronvold testified, to clean it up. The prosecutor also suggested the home had been burglarized at some point prior to Gates's March 14, 2010 morning walk-through by either Gronvold or Lavelle or both of them and they had then returned later that day to steal more things.

5

Defense counsel reviewed the evidence he asserted raised a reasonable doubt whether Gronvold had entered the house with an intent to commit a theft or was simply there, at Lavelle's request, to help her clean out the house. Counsel suggested, if items had been stolen from the home, they had been taken at some time prior to Gronvold's arrival and argued that, even if Gronvold had moved things inside the house, which he denied, that did not necessarily mean he had formed an intent to steal them.

3. *Verdict and Sentencing*

The jury found Gronvold guilty of burglary and further found true the allegation the dwelling was inhabited during the commission of the offense, making it first degree burglary. In bifurcated proceedings following the jury verdict, the court found the person present allegation had been proved beyond a reasonable doubt, noting, "It doesn't change the sentencing range in terms of the 2-4-6. It is more of a credit issue in terms of what is awarded in terms of the ultimate sentence."

Gronvold admitted the prior conviction allegations, and the court denied Gronvold's motion to dismiss his prior strike conviction. The court then sentenced Gronvold to an aggregate state prison term of 21 years: the upper term of six years doubled under the three strikes law, plus five years for the prior serious felony conviction and four years for the prior prison sentences. Gronvold was awarded a total of 483 days of presentence custody credit: 420 days of actual custody and 63 days (15 percent of 420) of conduct credit. The court also imposed the statutory fees, assessments and fines.

**DISCUSSION**

1. *Section 2933.1's Limits on Conduct and Worktime Credits for Violent Felons*

Former section 4019, as it was in effect on March 14, 2010 when Gronvold committed this burglary, provided that certain defendants could earn presentence conduct credits at the rate of two days for every two days in custody, commonly referred to as one-for-one credits, but defendants who had committed a serious felony were subject to the pre-January 25, 2010 formula for calculating presentence credits—six days deemed served for every four days spent in actual custody. (Stats. 2009, 3rd Ex. Sess 2009-2010,

6

ch. 28, § 50.) Notwithstanding section 4019, however, section 2933.1, subdivision (c), further limits presentence conduct credits to no more than 15 percent of the actual period of confinement for any person convicted of one of the crimes listed as a violent felony in section 667.5, subdivision (c).

Similarly, section 2933, subdivision (b), allows an inmate serving a sentence in state prison to earn worktime credit on a one-for-one basis with actual time in custody based on participation in a qualifying work, training or educational program, but section 2933.1, subdivision (a), imposes a 15 percent cap for worktime credit for inmates convicted of a violent felony: "Notwithstanding any other law, any person who is convicted of a felony offense listed in subdivision (c) of Section 667.5 shall accrue no more than 15 percent of worktime credit, as defined in Section 2933."

The nature of section 2933.1's limitations on the accrual of conduct credit was explained in *People v. Lara* (2012) 54 Cal.4th 896 (*Lara*) in which the Supreme Court held a trial court lacked authority under section 1385 to disregard credit-limiting facts disqualifying a local prisoner from earning day-for-day conduct credits under section 4019. This holding was based on the established rule that a trial court's power under section 1385 reaches only the individual charges and allegations in a criminal action; the court may not strike facts that need not be charged or alleged. (*Lara*, at p. 901; see generally *In re Varnell* (2003) 30 Cal.4th 1132.)

The trial court in *Lara* had accepted a negotiated plea agreement that included striking under section 1385 defendant's prior conviction for first degree burglary, which, as a serious offense, would otherwise have required sentencing him as a second strike offender under the three strikes law and imposing a five-year serious felony enhancement under section 667.5, subdivision (a). In concluding the trial court could not also ignore the prior burglary conviction in determining defendant's eligibility for conduct credits, the *Lara* Court stated, "The historical facts that limit a defendant's ability to earn conduct credits do not form part of the charges and allegations in a criminal action." (*Lara, supra*, 54 Cal.4th at p. 901.) As to the argument that credit disabilities must be pleaded

7

and proved to the trier of fact because they increase punishment, the Court explained these disqualifying facts do not define the range of permissible sentencing. (*Id*. at p. 905.) Rather, they are similar to "sentencing factors" that affect the specific sentence within the range authorized by the jury's findings: Like sentencing factors, "the disqualifying facts cannot remove a sentence from the statutory range. Instead, they merely limit a defendant's ability to earn credits against a sentence for good behavior." (*Ibid*.)

The Supreme Court described the nature of conduct credits in a comparable manner in *People v. Brown* (2012) 54 Cal.4th 314, decided the month before *Lara*. The *Brown* Court held the more generous presentence conduct credit formula set forth in former section 4019 in effect between January and September 2010—the version of the statute applicable to Gronvold—applied prospectively, "meaning that qualified prisoners in local custody first became eligible to earn credit for good behavior at the increased rate beginning on the statute's operative date." (*Brown*, at p. 318.)[2] In distinguishing cases involving retroactive application of statutes lessening the punishment for a particular offense to previously convicted offenders (see, e.g., *In re Estrada* (1965) 63 Cal.2d 740), the Court emphasized the difference between "statutes that provide behavior incentives (e.g., conduct credits) and statutes that 'mitigat[e] . . . the penalty for a particular crime.'" (*Brown*, at p. 326.) "Conduct credits encourage prisoners to conform to prison regulations, to refrain from criminal and assaultive conduct, and to participate in work and other rehabilitative activities." (*Id*. at p. 317.)

2. *Apprendi, Harris, and Alleyne*

In *Apprendi, supra*, 530 U.S. 466 the defendant had been sentenced to state prison for 12 years under a New Jersey hate-crime statute that increased the maximum term of imprisonment from 10 years to 20 years if the trial judge found by a preponderance of the

---

[2] The *Brown* Court also held the equal protection clauses of the federal and state Constitutions did not require retroactive application of this iteration of section 4019. (*People v. Brown, supra*, 54 Cal.4th at pp. 318, 328-330.)

8

evidence the crime had been committed "'to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity.'" (*Id*. at pp. 468-469.) The Supreme Court invalidated the statute, explaining the crime, together with its sentence enhancement, were the "functional equivalent" of a single greater crime and holding the federal Constitution requires all elements of a crime be submitted to a jury and proved beyond a reasonable doubt: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Id*. at p. 490; accord *Blakely v. Washington* (2004) 542 U.S. 296, 301 [124 S.Ct. 2531, 159 L.Ed.2d 403] [quoting *Apprendi*].) Although *Apprendi* held any "facts that increase the prescribed range of penalties to which a criminal defendant is exposed" are elements of the crime (*Apprendi*, at p. 490), the Court also recognized "nothing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute." (*Id*. at p. 481.)

*Harris v. United States, supra*, 536 U.S. 545 limited *Apprendi* to facts increasing the statutory maximum penalty for a crime, allowing the sentencing court to exercise factfinding authority with respect to factors triggering a mandatory minimum sentence below the maximum authorized by the jury's verdict. Unlike the history reviewed in *Apprendi* with respect to the maximum penalty for an offense, the *Harris* Court found "no comparable historical practice of submitting facts increasing the mandatory minimum to the jury, so the *Apprendi* rule did not extend to those facts." (*Harris*, at p. 563.) Thus, it was permissible for the trial court to find the facts giving rise to a mandatory minimum sentence of seven years for brandishing a firearm (as opposed to merely being armed) during the commission of a drug trafficking offense. Read together, *Apprendi* and *Harris* meant those facts setting the outer limit of a sentence were the elements of the crime for the purpose of federal constitutional analysis, but a legislature could constitutionally

9

restrict the sentencing court's discretion in selecting the prison term imposed by requiring defendants to serve minimum terms after the court made certain factual findings.

*Harris v. United States* was overruled in *Alleyne, supra*, 570 U.S. ___ [133 S.Ct. 2151], which also involved the federal statute imposing a seven-year mandatory minimum term for brandishing a firearm during the commission of prescribed offenses. The *Alleyne* Court held, "When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury." (*Id*. at p. ___ [133 S.Ct. at p. 2162].) "In *Apprendi*, we held that a fact is by definition an element of the offense and must be submitted to the jury if it increases the punishment above what is otherwise legally prescribed. [Citation.] While *Harris* declined to extend this principle to facts increasing mandatory minimum sentences, *Apprendi'*s definition of 'elements' necessarily includes not only facts that increase the ceiling, but also those that increase the floor. Both kinds of facts alter the prescribed range of sentences to which a defendant is exposed and do so in a manner that aggravates the punishment. [Citations.] Facts that increase the mandatory minimum sentence are therefore elements and must be submitted to the jury and found beyond a reasonable doubt." (*Alleyne*, at p. ___ [133 S.Ct. at p. 2158].)[3]

---

[3] The *Alleyne* Court also observed, "Defining facts that increase a mandatory statutory minimum to be part of the substantive offense enables the defendant to predict the legally applicable penalty from the face of the indictment." (*Alleyne, supra*, 570 U.S. at p. ___ [133 S.Ct. at p. 2161].) This salutary purpose is satisfied by section 667.5, subdivision (c)(21)'s requirement that the presence of a nonaccomplice during the commission of the burglary be charged, as well as proved, as it was in Gronvold's information. (See *Garcia, supra*, 121 Cal.App.4th at p. 275 ["[t]he pleading and proof requirements of section 667.5, subdivision (c) safeguard the defendant's right to notice of the facts the prosecution intends to prove as well as the due process requirement that the People actually prove the facts required either for imposing an increased penalty or for making decisions regarding the severity of the sentence within the prescribed range"].)

10

3. *There Is No Federal Constitutional Right to a Jury Determination of Facts Relating to Conduct Credits*

In *Garcia, supra*, 121 Cal.App.4th at page 277, this court held section 2933.1's limitations on earning conduct credits is not a sentencing enhancement and does not increase the maximum six-year penalty prescribed for first degree burglary. "Rather, the provisions for presentence conduct credits function as a sentence 'reduction' mechanism outside the ambit of *Apprendi*. . . . Lessening the 'discount' for good conduct credit does not increase the penalty beyond the prescribed maximum punishment and therefore does not trigger the right to a jury trial identified in *Apprendi*." (*Garica*, at p. 277; see also *id.* at p. 274 ["determining whether a defendant's current conviction for first degree burglary is a violent felony for the purpose of calculating presentence conduct credits is properly part of the trial court's traditional sentencing function"].)[4]

*Garcia*'s characterization of credit-limiting facts as not defining a defendant's sentencing range was fully embraced by the Supreme Court in *Lara, supra*, 54 Cal.4th 896, which, as discussed, held such disabling facts "do not form part of the charges and allegations in a criminal action." (*Lara*, at p. 901.) Citing *Garcia* with approval, as well as several other post-*Apprendi* cases, the Court observed, "[T]he courts of this state have rejected the argument that the People must allege credit disabilities in the accusatory pleading or prove the disabling facts to the trier of fact." (*Ibid.*) Indeed, in holding that historic facts restricting a defendant's ability to earn conduct credits need not be formally pleaded and proved, the *Lara* Court explained, "we have imposed such a requirement only as to facts that define the permissible range of sentencing for an offense by increasing the sentence, *prescribing a minimum term*, or entirely precluding probation."

---

[4]     *Garcia* also held section 667.5, subdivision (c)(21)'s definition of a violent felony as those first degree burglaries "wherein it is charged and proved that another person, other than an accomplice, was present in the residence during the commission of the burglary" did not create a statutory right to a jury determination whether the burglary qualified as a violent felony. (*Garcia, supra*, 121 Cal.App.4th at p. 278.) Gronvold does not challenge that aspect of our prior decision.

11

(*Id.* at p. 906, italics added.) Facts limiting conduct credits, the Court held, do none of those things. (See *ibid.;* see also *People v. Brown, supra*, 54 Cal.4th at p. 326 [conduct credits provide behavior incentives, not mitigation of the penalty for a crime].)

Nothing in *Alleyne, supra*, 570 U.S. ___ [133 S.Ct. 2151] alters that analysis. Whether sentenced to the statutory maximum (six years for first degree burglary under section 461, subdivision (a)) or the statutory minimum (two years), limiting the defendant's ability to earn conduct credits, as a practical matter, lengthens the period he or she must spend in prison. It is one determinant of the actual prison term served. (Cf. *Weaver v. Graham* (1981) 450 U.S. 24, 33 [101 S.Ct. 960, 67 L.Ed.2d 17] [as applied to prisoner whose offense preceded statute's effective date, new law reducing conduct credits violated ex post facto clause because it "substantially alters the consequences attached to a crime already completed, and therefore changes 'the quantum of punishment'"]; see also *Lara, supra*, 54 Cal.4th at pp. 905-906 ["[w]e need not take issue with the proposition that a person who is released a day early is punished a day less"].) The impact of "lessening the discount" (or restricting the opportunity to earn the discount) for good conduct is similar whether the defendant has been sentenced to six years in prison or two years. If the former is not an increase in the upper end of the sentencing range (that is, the maximum sentence) for purposes of *Apprendi*, the latter cannot be an increase in the mandatory minimum sentence under *Alleyne*. (See *In re Pacheco* (2007) 155 Cal.App.4th 1439, 1445 ["A reduction in the worktime credits allowed by section 2933.1 may feel like 'additional punishment' to a prisoner . . . . However, a reduction is credits is not considered 'punishment' under the law. Rather, such credits are benefits a prisoner earns based on good conduct and participation in qualifying programs."].)

Our conclusion neither *Apprendi* nor *Alleyne* requires a jury, rather than the sentencing court, to decide whether a first degree burglary qualifies as a violent felony for purpose of calculating conduct credits does not mean the person present allegation may properly be determined by the court in all situations. For example, section 186.22,

subdivision (b)(1)(B), authorizes a five-year enhancement for any serious felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the requisite specific intent. Section 186.22, subdivision (b)(1)(C), specifies a 10-year criminal street gang enhancement if the offense is a violent felony. If the People seek the 10-year enhancement, the person present allegation that escalates first degree robbery from a serious to a violent felony must be submitted to the jury under *Apprendi*. (See *Porter v. Superior Court* (2009) 47 Cal.4th 125, 134; *People v. Sengpadychith* (2001) 26 Cal.4th 316, 327.)[5]

---

[5] Gronvold observes that, in addition to limiting his ability to accrue conduct credits, classifying his first degree burglary as a violent offense under section 667.5, subdivision (c)(21), rather than a serious felony under section 1192.7, subdivision (c)(18) (defining "any burglary of the first degree" as a "serious felony"), may have adverse consequences in future criminal proceedings. For example, he explains, rather than the one-year prior prison term enhancement specified in section 667.5, subdivision (b), if a new violent felony is committed by an individual who has previously committed a violent felony, the prior prison term enhancement is three years. (§ 667.5, subd. (a).) The proper application of this aggravated form of the prior prison enhancement is not before us—assuming it could ever be imposed in light of section 667, subdivision (a)'s five-year enhancement for prior serious felonies and the dual-use prohibition against imposing separate prior conviction and prior prison term enhancements for the same prior offense. (See *People v. Jones* (1993) 5 Cal.4th 1142, 1150 ["when multiple statutory enhancement provisions are available for the same prior offense, one of which is a section 667 enhancement, the greatest enhancement, but only that one, will apply"].) However, as we explained in *Garcia, supra*, 121 Cal.App.4th at page 279, "[I]n an analogous situation the Supreme Court held that determining whether a prior conviction is a serious or violent felony for purposes of the Three Strikes law is '"the type of inquiry traditionally performed by judges as part of the sentencing function"' [citation], notwithstanding that the determination may have 'a factual content.'"

13

4.  *Any Possible Error in Not Submitting to the Jury the Question Whether a Nonaccomplice Was Present During the Burglary Was Harmless Beyond a Reasonable Doubt*

*Apprendi* error is subject to harmless error review under *Chapman v. California* (1967) 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705].  (See *Washington v. Recuenco* (2006) 548 U.S. 212, 222 [126 S.Ct. 2546, 165 L.Ed.2d 466] ["[f]ailure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error"]; *People v. Sengpadychith, supra,* 26 Cal.4th at p. 327.)  Even if, contrary to our conclusion, the person present allegation should have been submitted to the jury under *Apprendi* and *Alleyne*, we are convinced beyond a reasonable doubt the jury would have found the allegation true.  (See generally *People v. Sandoval* (2007) 41 Cal.4th 825, 839 [test for harmless error in this context is whether the reviewing could can conclude, "beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true" the sentencing fact or circumstance had it been submitted to the jury].)

In his testimony Gronvold admitted he was inside the Bringas residence when other individuals (Genari and the Van Weeldens) were present in the home.  Genari and Lisa Van Weelden similarly testified they saw Gronvold in the residence after they had entered it.  Indeed, that fact was undisputed.  The only contested issue at trial was Gronvold's intent when he entered:  Was he there, as he claimed, to help Lavelle clean out the house or had he entered the dwelling with the intent to commit a theft?  The properly instructed jury found Gronvold had the requisite intent for first degree burglary—a finding not challenged in this appeal.  In light of the evidence and that finding, the jury would have necessarily also found Gronvold was present in the home while another person, not an accomplice, was present had it been asked to make that determination.

14

## DISPOSITION

The judgment is affirmed.


PERLUSS, P. J.

We concur:


WOODS, J.


SEGAL, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.